```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
BONNIE LAM,

                Plaintiff,                MEMORANDUM AND ORDER
                                          24 Civ. 6098 (NRB)
        - against -

STATE STREET CORPORATION and
STATE STREET TRUST & BANK CO.,

                Defendants.

-------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Bonnie Lam moves to compel two categories of documents from her former employers, defendants State Street Corporation and State Street Trust & Bank Co. (collectively, "State Street"). ECF No. 48. For the following reasons, plaintiff's motion is denied.

## BACKGROUND[1]

Before discussing plaintiff's motion, a brief review of defendants' discovery efforts is necessary.

This case has proceeded on an expedited discovery schedule due to plaintiff's cancer diagnosis and prognosis. ECF No. 4.

---

[1] For purposes of this opinion, we presume the reader's familiarity with the facts of the case. However, to briefly summarize, plaintiff brings nine claims against her former employers, alleging that State Street improperly: (a) interfered with her protected medical leave; (b) discriminated against her due to her protected characteristics; and (c) retaliated against her based on her "protected activities," including, inter alia, her purported whistleblowing activity. ECF No. 1 ¶¶ 132-175.

-1-

Despite the constraints of this expedited schedule, defendants "produced nearly 14,000 pages of ESI" after their ESI vendor spent "1,400+ hours of attorney time" reviewing "approximately 36,000 documents." ECF No. 56 ¶¶ 18, 20, 21. "Rolling productions" of documents "were made on a custodian-by-custodian basis, in accordance with the [expedited] deposition schedule." Id. ¶ 18. For example, "Defendants . . . produce[d] thousands of documents in advance of Plaintiff's emergency deposition." Id. ¶ 3.

## LEGAL STANDARD

"On a motion to compel, the movant 'must demonstrate that the information sought is discoverable.'" Max Torgovnick v. SoulCycle, Inc., No. 17 Civ. 1782 (PAC), 2018 WL 5318277, at *2 (S.D.N.Y. Oct. 29, 2018) (citation omitted). "While the scope of discovery is 'broad,' it is not 'limitless,'" Babbitt v. Koeppel Nissan, Inc., No. 18 Civ. 5242 (NGG) (CLP), 2019 WL 3296984, at *1 (E.D.N.Y. July 23, 2019) (citation omitted), and a "district court has wide latitude to determine the scope of discovery," In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008). Discovery is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

## DISCUSSION

Plaintiff moves to compel the production of two categories of

documents: (1) non-privileged documents from seven agreed-upon custodians that mention "Bonnie" or "Lam" during the relevant period; and (2) documents created before December 15, 2023 that have been withheld as privileged. ECF No. 48 ("Mot.") at 1. We discuss each category in turn.

## I.     Additional Documents Mentioning "Bonnie" or "Lam"

Defendants identified a set of "approximately 36,000 documents" for their ESI vendor to review by conducting searches which "paired . . . overly broad terms with other relevant search terms." ECF No. 56 ¶¶ 18, 19. For example, instead of using the broad search terms "Bonnie" or "Lam", defendants searched "Terminat*" w/10 ("Bonnie" OR "LAM"). ECF No. 56-1 at 3. All in all, defendants accepted all custodians that plaintiff proposed and ran 49 distinct search terms across the ESI of each set of agreed-upon custodians. ECF No. 56 ¶ 16.

Nevertheless, plaintiff contends that defendants' searches "eliminat[ed] documents expressly discussing Plaintiff from its production" and seeks all documents that mention "Bonnie" or "Lam" without any of defendants' "added connector terms." Mot. at 2-3. We now review whether this requested discovery is relevant and proportional.

### a. Relevance

"The burden of demonstrating relevance is on the party seeking

discovery." Trilegiant Corp. v. Sitel Corp., 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (citation omitted). "Relevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Lindsey v. Butler, No. 11 Civ. 9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). At the same time, "[m]ere speculation as to the existence of additional documents is insufficient to warrant an order to compel." Trilegiant, 275 F.R.D. at 436.

Plaintiff presumes, rather than proves, the relevance of the contested discovery. Plaintiff speculates that the seven custodians at issue would only "email about Plaintiff during the relevant period in ways that are []relevant to this dispute." Mot. at 5-6; see also ECF No. 58 ("Reply") at 6 n.1 ("Plaintiff is therefore entitled to the withheld documents from these key custodians that almost certainly support Plaintiff's theory of the case."). However, as defendants persuasively explain, the terms "Bonnie" and "Lam" are excessively overbroad, and a search for either term would return numerous irrelevant documents. See ECF No. 57 ("Opp.") at 1. Specifically, based on advice from their ESI vendor, defendants assert that "running the term 'Lam' would return as a 'hit' any document containing the letter L, A, and M

-4-

in sequence[,]" meaning that searching "Lam" would return "documents that simply contain those letters in sequence or reference other employees with the same surname." ECF No. 56 ¶ 25.

Indeed, plaintiff cannot identify a "specific document or category of documents that she believes was missed by Defendant[s'] search." Opp. at 8. In her reply, plaintiff cites deposition testimony to argue that defendants first withheld, then produced, "a termination list," which "shows Defendants added Plaintiff's name to the chopping block" in January 2023, "right around when Plaintiff took her second medical leave in 2022 for cancer treatment." Reply at 5 (citations omitted). Accordingly, plaintiff asserts that "State Street is withholding" "previous versions of the termination list . . . which either mention or do not mention Bonnie Lam." Id. (emphasis omitted).

There are two rejoinders to plaintiff's assertion. For one, a search of all documents with the terms "Bonnie" or "Lam" would not reveal "previous versions of the termination list . . . which . . . do not mention Bonnie Lam." Id. Secondly, the cited deposition testimony does not support plaintiff's argument. When asked how the deponent was first told that Ms. Lam's position had been identified for termination, the deponent stated, "I don't recall the exact mechanics, it could have been [an] in[-]person

meeting." ECF No. 58-2 at 66:20-25. In short, contrary to plaintiff's citations, the deponent did not testify about "previous versions of the termination list . . . which . . . mention Bonnie Lam." Reply at 5; see also ECF No. 58-2 at 66:9-11, 73:10-24, 93:12-22.[2]

Moreover, plaintiff repeatedly cites Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003), a distinguishable case, to argue that the requested discovery is relevant. See Mot. at 4, 5, 6, 8; Reply at 2. In Zubulake, the defendant produced 100 pages of responsive e-mails when the plaintiff "herself had produced approximately 450 pages of e-mail correspondence." Zubulake, 217 F.R.D. at 312-313. It soon became apparent that the defendant had not searched all of its e-mails and, as a result, did not produce all relevant e-mail correspondence. Id. at 317. In other words, in contrast to the situation here, the plaintiff in Zubulake "knew that there were additional responsive e-mails that [defendant] had failed to produce." Id. at 313 (emphasis in original). Here, plaintiff has not made a similar showing and relies instead on

---

[2]   Curiously, plaintiff does not attach the alleged termination list to her reply. Instead, plaintiff filed under seal the purported termination list as an exhibit to an unrelated dispute. ECF No. 62 at 83-85. The email accompanying the list does not explicitly mention a prior written communication about the topic and appears to be the first email in a redacted email thread. Id. at 84.

It should also be noted that plaintiff did not move to compel a targeted search for all versions of the termination list, instead asking for the far more disproportionate search of all documents with either the term "Bonnie" or "Lam".

mere speculation to assert that the requested discovery is relevant.[3]

### b. Proportionality

"A court must evaluate whether the benefit of requested discovery is proportional to the burden of producing it." Edmar Fin. Co., LLC v. Currenex, Inc., 347 F.R.D. 641, 646 (S.D.N.Y. 2024). "Proportionality focuses on the marginal utility of the discovery sought." Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (collecting cases). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." Id. (citation omitted).

Courts are "encouraged to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." Safe Step Walk-In Tub Co. v. CKH Indus., Inc., No. 15 Civ. 7543 (NSR), 2023 WL 1383678, at *2 (S.D.N.Y. Jan. 31, 2023) (citations and quotation marks omitted). "In other words, the

---

[3] Plaintiff argues that defendants "initially proposed Plaintiff's name as a search term" and are "estopped from disputing the terms' relevance now." Reply at 2. Defendants disagree with plaintiff's characterization, stating that they "did not agree to review or produce all of the results of" the initial search terms. ECF No. 56 ¶ 6 (emphasis in original). There is no need to decide this dispute, because even if we assume that the discovery is relevant, plaintiff's discovery request is disproportionate to the needs of this case.

days of $100 discovery for $10 cases are over." Max Torgovnick, 2018 WL 5318277, at *2. Accordingly, courts have urged parties to "carefully craft[]" search terms, as "[p]oorly crafted terms may return thousands of irrelevant documents and increase, rather than minimize[,] the burden of locating relevant and responsive ESI." Raine Grp. LLC v. Reign Cap., LLC, No. 21 Civ. 1898 (JPC) (KHP), 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022) (finding "[m]odifiers are often needed to hone in on truly relevant documents").

Plaintiff speculates "that the actual number of documents State Street is withholding is likely dozens or hundreds per custodian." Mot. at 6; see also id. at 8 ("[T]he evidence sought is limited in scope."); Reply at 4 ("There are only a small number of already gathered documents at issue.").

Plaintiff's speculation is inaccurate. Applying a search of the term "Lam" leads to 27,936 additional documents for defendants to review. ECF No. 68-1 at 2. Applying a search of the term "Bonnie" leads to 18,751 additional documents for defendants to review. ECF No. 68-2 at 2. Applying a search of the terms "Bonnie" and "Lam" together leads to 12,113 additional documents for defendants to review. ECF No. 68-3 at 2.[4]

---

[4] Following the parties' briefing, the Court asked defendants to conduct three additional searches of the ESI for the seven agreed upon custodians during the relevant time period. ECF No. 64. In their response to the Court's inquiry, defendants provided a chart, broken down by custodian, of the total number of

Given "the somewhat factually light basis for believing that the second search for documents will yield responsive and relevant documents that are meaningful to the litigation," the Court declines to compel production of this material. <u>GMO Gamecenter USA, Inc. v. Whinstone US, Corp.</u>, No. 22 Civ. 5974 (JPC) (KHP), 2025 WL 722853, at *1 (S.D.N.Y. Mar. 5, 2025). A contrary decision would "sanction a scorched-earth approach to discovery that is not permitted under Rule 1 or Rule 26 principles of proportionality." <u>Id.</u>[5]

**II. Documents Withheld as Privileged**

Defendants' categorical privilege log states that they are withholding, <u>inter alia</u>, "[c]ommunications between State Street employees and State Street's in-house legal team for the purpose or [sic] seeking or obtaining legal advice regarding employment law issues." ECF No. 48-2 at 2. Communications falling into this

---

unique hits from conducting these three searches. ECF No. 68. Contrary to plaintiffs' assertion "that the actual number of documents State Street is withholding is likely dozens or hundreds per custodian," Mot. at 6, defendants' response shows that the actual number of documents is approximately hundreds or thousands per custodian, <u>see</u> ECF No. 68 at 2.

[5] The Court rejects other requests and arguments made by the parties. Given this Court's ruling, there is no basis for either plaintiff's requested adverse inference or defendants' requested cost-shifting. To the extent that plaintiff attempts to justify the scope of her discovery demands on the basis of defendants' extensive resources, Mot. at 8, the "fact that the respective parties have different financial resources is not a decisive factor in resolving discovery disputes. Rather, the court must act in an even-handed manner to prevent the misuse of discovery to wage a war of attrition to coerce a party, irrespective of the party's financial ability." 6 Moore's Federal Practice - Civil § 26.60 (collecting cases). Similarly, plaintiff's asserted damages, Mot. at 8, do not change the Court's conclusion that the marginal utility of the requested discovery is limited compared to the burden of producing it.

category span January 1, 2022 to the present.  Id.

Plaintiff asserts that State Street witnesses "testified that they did not speak to State Street lawyers—let alone seek legal advice from them—regarding this matter before the bank fired Mrs. Lam on December 15, 2023." Mot. at 1, 1 n.1 (collecting deposition testimony).  As such, plaintiff seeks "discoverable documents created before December 15, 2023 that, according to unrebutted deposition testimony, cannot possibly be covered by privilege." Id. at 15.

Plaintiff's argument is seriously flawed.  While plaintiff asked State Street witnesses whether they had conferred with an attorney "regarding Miss Lam's situation," ECF No. 48-1 at Brimage-Taylor Dep. Tr. 113:20-23, a negative answer to that question does not preclude State Street employees from consulting with State Street's in-house legal team concerning "employment law issues" more broadly.  ECF No. 48-2 at 2.  Therefore, the deposition testimony does not preclude attorney-client privilege withholdings of communications concerning employment law issues.  Stated otherwise, none of the deposition testimony is inconsistent with the notion that State Street consulted lawyers about other employment law topics before terminating Ms. Lam, but did not review her specific case with attorneys until Ms. Lam brought the

instant lawsuit.[6]  Indeed, defense counsel states in a declaration that "most of the documents withheld as privileged have nothing at all to do with Plaintiff or her separation.  Rather, they related to topics like contract compliance and/or legal advice surrounding billing issues."  ECF No. 56 ¶ 28.[7]

Since plaintiff has not established that there is any non-privileged discovery to compel, the Court declines to order additional document discovery.  See Weber v. Paduano, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *11 (S.D.N.Y. Jan. 22, 2003) ("Plaintiff has not . . . established any basis to believe that any . . . document exists that has not been either produced or

---

[6] This conclusion is supported by reviewing all of the testimony cited by plaintiff.  For clarity, the Court reproduces plaintiff's collection of deposition testimony in the first footnote of her motion:
> see also [ECF No. 48-1] Shah Dep. Tr. at 78:19-79:6 (testifying that she did not speak with State Street's in-house counsel "prior to M[r]s. Lam's termination in December of '23" or with any other State Street attorney); Murray Dep. Tr. at 138:19-22 ("Q: Did you at any point prior to Mrs. Lam's termination in December 2023 speak with any attorneys about Mrs. Lam's circumstances? A: No."); Ketner Dep. Tr. 64:25 ("I had no contact with State Street legal until after [Plaintiff's] exit."); Shippy Dep. Tr. 164:18-20 ("Q: Prior to Mrs. Lam's termination in December 2023, did you speak with any State Street attorneys? A: No, I have not."), Brimage-Taylor Dep. Tr. 113:14-114:16 (testifying that she did not speak with "Chris Powell" (in-house counsel) "or any other legal counsel" in 2023 about Plaintiff's case); Mittal Dep. Tr. 15[3]:13-20 (testifying "none that I recall" when asked if he spoke with counsel about Mrs. Lam's case prior to her termination); Armstrong Dep. Tr. 41:13-20 (accord).

Mot. at 1 n.1.

[7] The Court rejects plaintiff's contention that State Street "waived any claim to privilege" because the log "does not meet the burden of proving that all the categorically withheld documents are privileged."  Mot. at 13, 14 (citations omitted).  To the contrary, the Court reads the description of the withheld documents to be a representation by counsel to the Court that the sender or recipient of the communications was an attorney and the content of the communications concerned legal advice.

listed in a privilege log, and accordingly the motion to compel production of such hypothetical documents is denied.").

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel is denied.  The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 48.

Dated:    March 17, 2025
          New York, New York

_____
          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE